## JOHN A. CAMPBELL *et al.*

### *v.*

## JAMES W. WHITSON *et al.*

1. FRAUDULENT CONVEYANCE—*valid as between the parties and privies in estate with notice.* It is a well settled and familiar doctrine, that, although voluntary conveyances are or may be void as to existing creditors, yet they are valid and effectual as between the parties, and also as to the heirs of the grantor and those claiming under him in privity of estate, with notice of the fraud. As to existing creditors, they are void only to the extent in which it may be necessary to deal with the conveyed estate for their satisfaction.

2. SAME—*effect of, as to a subsequent grantee.* A conveyance made to defraud creditors is valid as against a subsequent grantee who takes from

the original grantor as a volunteer, or without consideration. A subsequent purchaser, to avoid such a conveyance, must show affirmatively that he purchased *bona fide*, and for a valuable consideration.

WRIT OF ERROR to the Circuit Court of Wayne county; the Hon. JAMES M. POLLOCK, Judge, presiding.

Mr. JAMES McCARTNEY, for the plaintiffs in error.

Messrs. ROBINSON & BOGGS, for the defendants in error.

Mr. JUSTICE McALLISTER delivered the opinion of the Court:

This was a bill in equity, brought by defendants in error, in the Wayne circuit court, against plaintiffs in error, as the widow and heirs at law of John A. Campbell, deceased, to set aside a deed as a cloud upon complainant's title to certain described lands, alleged to have been executed by one James Dagg, under whom complainant claims title. The bill alleges that, in 1852, said Dagg and wife conveyed the said lands by deed in fee simple, with covenants of warranty, to complainant; "that within the last few months complainant has ascertained that Dagg, in 1848, conveyed the said lands to John A. Campbell, which deed is upon record, but complainant avers that said deed was made by Dagg to Campbell for the purpose of avoiding judgments which had been, or which he feared would be, recovered against him; and said Campbell never paid any sum whatever for said land, but simply held the title for Dagg for the purpose aforesaid; that about January, 1852, said Dagg, having relieved himself of the judgments or claims aforesaid, obtained from Campbell a return of the deed which Dagg had made to Campbell, the parties supposing that thereby Dagg was reinvested with title to the land; that Campbell never had possession, and complainant had no *actual* knowledge of the deed to Campbell until he had owned the land for about twenty-two years; that he was not a party to any wrongful act of Dagg."

16—68TH ILL.

There is no allegation that complainant purchased *bona fide* and for a valuation consideration, or at what time in the year 1852 the deed was made to him, or at what time in the year 1848 the deed to Campbell was made, or when it was recorded; but it is alleged that about January, 1852, Dagg relieved himself from the judgments and claims aforesaid.

There was an answer filed by guardian *ad litem* for minor defendants, and a demurrer to the bill by adult defendants, which the court overruled, and answers were filed by them denying the material allegations of the bill. The cause was heard upon pleadings and proofs, and a decree passed setting aside the deed from Dagg to Campbell as having been made to defraud the creditors of the former. The defendants bring the case to this court by writ of error.

The first question to be considered is, whether this bill should not have been dismissed for want of equity on the face of it.

The complainant, by his bill, occupies the position of a mere volunteer, thereby seeking to set aside a former deed made by his grantor to a third person for the purpose of defrauding creditors, after the creditors had all been satisfied.

It is well settled and familiar doctrine, that, although voluntary conveyances are or may be void, as to existing creditors, yet they are valid and effectual as between the parties, and can not be set aside by the grantor if he should become dissatisfied with the transaction; the law regards it as his own folly to have made such a conveyance, and leaves him to bear the consequences without means of redress. "They are," says Story, "not only valid as to the grantor, but also as to his heirs and all other persons claiming under him in privity of estate with notice of the fraud. A conveyance of this sort (it has been said with great truth and force,) is void only as against creditors, and then only to the extent in which it may be necessary to deal with the conveyed estate for their satisfaction. To this extent, and to this only, it is treated as if it had not been made. To every other purpose it is good.

Satisfy the creditors, and the conveyance stands." 1 Story's Eq. Jur. sec. 371, and cases cited in notes ; *Miller* v. *Marckle,* 21 Ill. 152.

It being the established rule that a voluntary conveyance to defraud creditors is valid and effectual as to the grantor, his heirs and all other persons claiming under him in privity of estate chargeable with notice of the fraud, the conclusion is clear and irresistible that the grantor can not, by a mere voluntary subsequent conveyance, clothe his grantee with rights which the policy of the law denies to such grantor himself. There must be something to take the transaction out of the category in which the fraudulent grantor has placed it, something which raises new and superior equities, such as a *bona fide* purchase for a valuable consideration.

The second section of the Statute of Frauds and Perjuries is a substantial copy of the act of 13 Eliz. Ch. 5, and of 27 Eliz. Ch. 4, and they are but in affirmance of the common law as it really was at and prior to the passage of those acts. *Miller* v. *Marckle,* 21 Ill. 153, above cited.

By the 27th Eliz. Ch. 4, all conveyances, etc., of any hereditaments for the intent and of purpose to defraud and deceive purchasers, are made void as against them. But, to take advantage of this statute, a person must have purchased *bona fide,* and for a valuable consideration. 2 Sug. on Vend. and Pur. 713, and cases in notes.

In speaking of this subject, Story says : " But then, in cases between different volunteers, a court of equity will generally not interfere, but will leave the parties where it finds them, as to title. It will not aid one against another; neither will it enforce a voluntary contract." 1 Story Eq. Jur. sec. 433 ; *Sexton* v. *Wheaton; Salmon* v. *Bennett,* 1 Am. Lead. Cases, 61.

We are of opinion, therefore, that the bill is insufficient upon its face, and the decree of the court below should be reversed and the cause remanded.

*Decree reversed.*