## TOWSON *v.* MOORE.

APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 198.   Argued January 25, 26, 1899. — Decided February 20, 1899.

In the case of a child's gift of its property to a parent, the circumstances attending the transaction should be vigilantly and carefully scrutinized by the court, in order to ascertain whether there has been undue influence in procuring it; but it cannot be deemed *prima facie* void: the presumption is in favor of its validity; and, in order to set it aside, the court must be satisfied that it was not the voluntary act of the donor.

The same rule as to the burden of proof applies with equal, if not greater, force to the case of a gift from a parent to a child, even if the effect of the gift is to confer upon a child, with whom the parent makes his home and is in peculiarly close relations, a larger share of the parent's estate than will be received by other children or grandchildren.

The rule, that successive and concurrent decisions of two courts in the same case upon a mere question of fact are not to be reversed unless clearly shown to be erroneous, is equally applicable in equity and in admiralty.

THE case is stated in the opinion.

*Mr. Franklin H. Mackey* and *Mr. A. H. Garland* for appellants.[1]   *Mr. R. C. Garland* was on their brief.

*Mr. Charles H. Cragin* for appellees.

MR. JUSTICE GRAY delivered the opinion of the court.

---

[1] See Vol. 172, p. 651.

This was a bill in equity, filed April 16, 1896, in the Supreme Court of the District of Columbia, by children of Leonidas C. Campbell, the son of William H. Campbell, against the two daughters of William H. Campbell, and against their husbands, who were also executors of the wills of William H. Campbell and of Mary I. Campbell, his widow and residuary devisee and legatee, to set aside a gift made by her to their two daughters, of thirteen United States bonds for $1000 each, (five bearing interest at four and a half per cent, and eight at four per cent,) as having been obtained from her by undue influence of themselves and their husbands; and for an account, and for further relief.

After the filing of answers fully and absolutely denying the undue influence charged in the bill, and of a general replication, the case was heard upon pleadings and proofs; and a decree was entered dismissing the bill. The plaintiffs appealed to the Court of Appeals of the District of Columbia, which affirmed the decree. 11 App. D. C. 377. The plaintiffs then appealed to this court. The leading and undisputed facts of the case were as follows:

William H. Campbell, an old resident of the city of Washington, died May 21, 1881, leaving a will, dated March 16, 1878, and duly admitted to probate, by which, after reciting that he had provided for his son, Leonidas C. Campbell, by establishing him in business, he gave a legacy of $5000 to each of his two daughters, Julia, wife of Alexander W. Russell, and Christiana, wife of Frederick L. Moore, and an annuity of $500 for life to his sister, Eloise A. Campbell; and devised and bequeathed all the rest and residue of his estate in fee to his wife, Mary I. Campbell, or, if she should not survive him, to his three children as tenants in common, the children of any child dying before him to take their parent's share; and appointed his son and his son in law Moore executors of his will. His son died August 15, 1878; and the testator, by a codicil dated September 7, 1878, and likewise admitted to probate, ratified and confirmed his will in all respects, except in appointing both his sons in law and one Maury executors thereof.

His wife and daughters survived him. His son had died intestate, and leaving a widow, Mary K. Campbell, and seven children, six of whom were the plaintiffs in this bill. The seventh child had died, leaving two children, who were made defendants, but were never served with process or otherwise brought into the case.

Upon the death of William H. Campbell, his executors, for the purpose of paying the annuity bequeathed by him to his sister, set apart the aforesaid United States bonds, of the par value of $13,000, and kept them intact during the life of the annuitant. She died October 1, 1885, and the bonds then became part of the residue of the estate bequeathed to his widow, Mary I. Campbell. On October 5, 1885, the bonds were transferred to her on the books of the Treasury Department; and on the next day, October 6, 1885, their market value then being about $15,000, she made a gift of them in equal shares to her two daughters, Mrs. Russell and Mrs. Moore.

After the death of her husband in 1881, Moore was her business agent; and she resided alternately with one or the other of her two daughters, living on affectionate and confidential terms with them and their husbands; and at the times of the gift in question, and of her death, was at the house of Mr. and Mrs. Moore in Georgetown. She died August 6, 1893, aged ninety-one years, and leaving a will, dated May 26, 1882, and duly admitted to probate, by which, after some small legacies, she devised and bequeathed all the residue of her estate, in equal thirds, to her two daughters and the seven children of her deceased son ; and appointed her sons in law Russell and Moore executors of her will.

It was contended by the plaintiffs that the Court of Appeals erred in holding that the burden of proving undue influence was upon them; and it was argued that, by reason of the confidential relations between the donor and the donees, the burden of proof was shifted upon the latter to prove the validity of the gift of the bonds. But the ruling of the Court of Appeals in this respect is supported by the decisions of this court, as will appear by an examination of those decisions.

In the leading case of *Jenkins* v. *Pye*, 12 Pet. 241, in which this court, at January term 1838, declined to set aside, for undue influence, a deed of real estate made by a daughter, shortly after coming of age, to her father, the court, speaking by Mr. Justice Thompson, said : " The grounds mainly relied upon to invalidate the deed were, that being from a daughter to a father rendered it, at least *prima facie*, void ; and if not. void on this ground, it was so because it was obtained by the undue influence of paternal authority. The first ground of objection seeks to establish the broad principle that a deed from a child to a parent, conveying the real estate of the child, ought, upon considerations of public policy growing out of the relations of the parties, to be deemed void; and numerous cases in the English chancery have been referred to, which are supposed to establish this principle." " It becomes the less necessary for us to go into a critical examination of the English chancery doctrine on this subject, for, should the cases be found to countenance it, we should not be disposed to adopt or sanction the broad principle contended for, that the deed of a child to a parent is to be deemed *prima facie* void. It is undoubtedly the duty of courts carefully to watch and examine the circumstances attending transactions of this kind, when brought under review before them, to discover if any undue influence has been exercised in obtaining the conveyance. But to consider a parent disqualified to take a voluntary deed from his child without consideration, on account of their relationship, is assuming a principle at war with all filial, as well as parental, duty and affection ; and acting on the presumption that a parent, instead of wishing to promote the interest and welfare [of], would be seeking to overreach and defraud his child. Whereas the presumption ought to be, in the absence of all proof tending to a contrary conclusion, that the advancement of the interest of the child was the object in view ; and to presume the existence of circumstances conducing to that result." 12 Pet. 253, 254.

Mr. Justice Story (who had concurred in that judgment) in the last edition of his Commentaries on Equity Jurisprudence which underwent his revision, and which was published

in 1846, after his death, stated the doctrine on the subject as follows: "The natural and just influence which a parent has over a child renders it peculiarly important for courts of justice to watch over and protect the interests of the latter; and therefore all contracts and conveyances, whereby benefits are secured by children to their parents, are objects of jealousy, and if they are not entered into with scrupulous good faith, and are not reasonable under the circumstances, they will be set aside, unless third persons have acquired an interest under them; especially where the original purposes for which they have been obtained are perverted, or used as a mere cover. But we are not to indulge undue suspicions of jealousy, or to make unfavorable presumptions as a matter of course in cases of this sort." And he supported this statement by large quotations from the opinion of Mr. Justice Thompson in *Jenkins* v. *Pye.* 1 Story Eq. Jur. (4th ed.) § 309.

In *Taylor* v. *Taylor*, 8 How. 183, decided at January term 1850, after the deaths of Justices Thompson and Story, the opinion of Mr. Justice Thompson in *Jenkins* v. *Pye* and the passage in Mr. Justice Story's Commentaries (omitting the last clause, which was not in the earlier editions,) were quoted by Mr. Justice Daniel as laying down the true rule upon the subject. While some expressions of that learned judge might seem to construe those authorities too strongly in favor of presuming undue influence, the decision in that case, setting aside a deed made by a daughter to her father soon after her coming of age, ultimately proceeded upon overwhelming proof of undue influence, derived in part from the testimony of witnesses to significant facts; in part from evidence conclusively showing that nearly all the statements in the deed itself were utterly false; and in part from a letter, written to the father by the daughter, a few days before executing the deed, and while they were living under the same roof, which, as the court declared, clearly appeared upon its face to be "a fabrication, designed to conceal the very facts and circumstances which it palpably betrays," and "not the production of an inexperienced girl, but of a far more practised and deliberate author."

It has since, more than once, been recognized by this court

that "the influence for which a will or deed will be annulled must be such as that the party making it has no free will, but stands *in vinculis.*" *Conley* v. *Nailor,* (1886) 118 U. S. 127, 134; *Ralston* v. *Turpin,* (1889) 129 U. S. 663, 670. See also *Mackall* v. *Mackall,* (1890) 135 U. S. 167, 172, 173.

In *Ralston* v. *Turpin,* just cited, in which the object of the bill was to set aside deeds made to an agent by his principal, this court, speaking by Mr. Justice Harlan, recognized the rule of law that "gifts procured by agents, and purchases made by them, from their principals, should be scrutinized with a close and vigilant suspicion;" and conceded that in the case then before the court the agent held such relations, personal and otherwise, to the principal, as would enable him to exercise great influence over the latter in respect to the mode in which his property should be managed; that the principal trusted the agent's judgment as to matters of business more than the judgment of any other man; and that he had an abiding confidence in the agent's integrity, as well as in his desire to protect his interests. Notwithstanding all this, the bill was dismissed, because the plaintiff had failed to show that the deeds were obtained by undue influence, but, on the contrary, it appeared by the great preponderance of the evidence that "although their execution may have been induced, not unnaturally, by feelings of friendship for, and gratitude to, the defendant Turpin, the grantor acted upon his own independent, deliberate judgment, with full knowledge of the nature and effect of the deeds. It was for the donor, who had sufficient capacity to take a survey of his estate, and to dispose of it according to an intelligent, fixed purpose of his own, regardless of the wishes of others, to determine how far such feelings should control him when selecting the objects of his bounty." 129 U. S. 675–677.

In *Mackall* v. *Mackall,* above cited, in which it was attempted to set aside a deed from a father to his son, it appeared that for twenty years the father and mother had been separated, and this son had remained with the father, taking his part, and assisting him in his affairs, and the other children had gone with the mother and taken her part in the

family differences.   This court, in the opinion delivered by Mr. Justice Brewer, speaking of the contention that the execution of the deed was induced by undue influence, said: " In this respect, reference was made to the long intimacy between father and son, the alleged usurpation by the latter of absolute control over the life, habits and property of the former, efforts to prevent others during the last sickness of the father from seeing him, and the subjection of the will of the father to that of the son, manifest in times of health, naturally stronger in hours of sickness.   A confidential relation between father and son is thus deduced, which, resembling that between client and attorney, principal and agent, parishioner and priest, compels proof of valuable consideration and *bona fides* in order to sustain a deed from one to the other.   But while the relationships between the two suggest influence, do they prove undue influence ? "   In giving a negative answer to that question, the court affirmed the following propositions: " Influence gained by kindness and affection will not be regarded as undue, if no imposition or fraud be practised, even though it induce the testator to make an unequal and unjust disposition of his property in favor of those who have contributed to his comfort and ministered to his wants, if such disposition is voluntarily made.   Confidential relations existing between the testator and beneficiary do not alone furnish any presumption of undue influence."   " That the relations between this father and his several children, during the score of years preceding his death, naturally inclined him towards the one and against the others is evident, and to have been expected. It would have been strange if such a result had not followed ; but such partiality towards the one, and influence resulting therefrom, are not only natural, but just and reasonable, and come far short of presenting the undue influence which the law denounces.   Right or wrong, it is to be expected that a parent will favor the child who stands by him, and give to him, rather than the others, his property.   To defeat a conveyance under those circumstances, something more than the natural influence springing from such relationship must be shown; imposition, fraud, importunity, duress, or something

of that nature, must appear; otherwise, that disposition of property which accords with the natural inclinations of the human heart must be sustained." 135 U. S. 171–173.

The principles established by these authorities may be summed up as follows: In the case of a child's gift of its property to a parent, the circumstances attending the transaction should be vigilantly and carefully scrutinized by the court, in order to ascertain whether there has been undue influence in procuring it; but it cannot be deemed *prima facie* void; the presumption is in favor of its validity; and, in order to set it aside, the court must be satisfied that it was not the voluntary act of the donor. The same rule as to the burden of proof applies with equal, if not greater force to the case of a gift from a parent to a child, even if the effect of the gift is to confer upon a child, with whom the parent makes his home and is in peculiarly close relations, a larger share of the parent's estate than will be received by other children or grandchildren.

Applying these principles to the case at bar, it is beyond doubt that the relations in which Mary I. Campbell stood to her daughters and their husbands afford no ground for putting upon them the burden of disproving undue influence.

Upon the question whether undue influence was in fact exercised, the record contains a mass of conflicting testimony, which is satisfactorily considered in the opinion of the Court of Appeals, and which it would serve no useful purpose to discuss anew.

A series of decisions of this court has established the rule, that successive and concurrent decisions of two courts in the same case, upon a mere question of fact, are not to be reversed, unless clearly shown to be erroneous. This rule, more often invoked in admiralty cases, is yet equally applicable to appeals in equity. *Dravo* v. *Fabel*, 132 U. S. 487, 490; *Stuart* v. *Hayden*, 169 U. S. 1, 14; *Baker* v. *Cummings*, 169 U. S. 189, 198.

There is one document, however, in the record, which was the subject of so much argument at the bar, that a brief notice

of it, and of the circumstances under which it was drawn up, will not be out of place.

The defendants, at the hearing, introduced in evidence a writing signed by Mary I. Campbell, and in the following terms: "Georgetown, D. C., October 6, 1885. I have to-day voluntarily, without suggestion from any one, given to my two daughters the 4½ and 4 per cent United States bonds coming to me from the estate of my husband, amounting to thirteen thousand dollars at par, thus equalling their share with the amount received by their brother and his family." There was evidence tending to show that this writing was drawn up and signed at the request of Mrs. Moore, and delivered to her, on the day of its date, and had since been kept by her.

It was argued, in behalf of the plaintiffs, that the procuring of this paper, containing the unusual and suspicious declaration that the gift of the bonds was made "voluntarily, without suggestion from any one," together with the long concealment of the paper from the plaintiffs, was strong evidence of an intent to back up a fraudulent transaction.

But this argument is fully met by evidence that the reason for the execution of this paper was that, three or four years before, Mary K. Campbell, the mother of the plaintiffs, had made an unfounded charge that Mrs. Moore had by undue influence procured the insertion of the legacies to herself and her sister in their father's will; and had only desisted from that charge upon receiving from Mary I. Campbell a written statement that it was "false in every particular." Under such circumstances, no suspicion of undue influence can arise out of the execution of the writing of October 6, 1885; or out of its not having been disclosed to the plaintiffs, which may well have been in order to prevent stirring up anew a family quarrel. In this respect, as in most others, the case wholly differs from that of *Taylor* v. *Taylor*, 8 How. 183, on which the plaintiffs rely.

Upon a careful examination of the whole evidence, aided by the able and thorough arguments of counsel, no sufficient ground appears for reversing the decree dismissing the bill.

*Decree affirmed.*