## MABEL LANE v. RESERVE TRUST CO.

NOTICE OF UNDUE PARENTAL INFLUENCE OVER FIDUCIARY CHARGEABLE IF DISCOVER-
ABLE BY ORDINARY DILIGENCE.

Protection of property rights of persons in actual or *quasi* wardship rela-
tions is a paramount purpose of the law, which views with suspicion
transactions between fiduciaries and their wards, and requires third
persons as parties to such transactions, to make reasonable inquiry
when the known facts suggest improper advantage of, or undue influence
over, the former. Hence, where a father procures his daughter shortly
after her becoming of full age to make a mortgage to a third party
for the father's benefit the doctrine of the English Chancery decisions
applies, and the third party seeking to sustain the transaction, though
without actual knowledge of undue influence or duress, is chargeable
with the duty of investigating the daughter's freedom of will in making·
such conveyance and becomes subject to such equities as may exist
between parent and child. Judge Winch dissents.

[Proof of this decision and syllabus has been submitted to Judge Henry
and corrected.]

ERROR to Cuyahoga common pleas court.

**Mathers & Orgill,** for plaintiff in error:

Cited and commented upon the following authorities: *Archer*
v. *Hudson,* 7 Beav. 551; *Maitland* v. *Irving,* 15 Sim. 437; *Maitland* v.
*Backhouse,* 16 Sim. 58; *Espey* v. *Lake,* 10 Hare 260; *Savery* v. *King,* 5·
H. L. Cas. 626; *Kempson* v. *Ashbee,* 10 L. R. Ch. 15; *Baker* v. *Bradley,*
7 De. G. M. & G. 597; *Bridgman* v. *Green,* 2 Ves. Sr. 627; *Huguenin* v..
*Baseley,* 14 Ves. Jr. 273; *Cooke* v. *Lamotte,* 15 Beav. 234; *Whelan* v.
*Whelan,* 3 Cow. 537; *Bennett* v. *Wade,* 1 Dick. 84; *Davidson* v. *Russell,*.
2 Dick. 761; *Noble* v. *Moses,* 81 Ala. 530 [1 So. Rep. 217; 60 Am. Rep.
175]; *Noble* v. *Moses,* 74 Ala. 604; *Bergen* v. *Udall,* 31 Barb. 9; *Berk-·
meyer* v. *Kellerman,* 32 Ohio St. 239 [30 Am. Rep. 577].

**Howland & Niman,** for defendant in error:

Cited and commented upon the following authorities: *Truman* v.
*Lore,* 14 Ohio St. 144; *Mallow* v. *Walker,* 115 Ia. 238 [88 N. W. Rep.
452; 91 Am. St. Rep. 158]; *Delaplain* v. *Grubb,* 44 W. Va. 612 [30 S.
E. Rep. 201; 67 Am. St. Rep 788]; *Coleman* v. *Smith,* 55 Ala. 368;
*Moses* v. *Dade,* 58 Ala. 211; *Rogers* v. *Adams,* 66 Ala. 600; *Green* v.
*Scranage,* 19 Ia. 461 [87 Am. Dec. 447]; *Baldwin* v. *Snowden,* 11 Ohio·

Cuyahoga County.

St. 203 [78 Am. Dec. 303]; *Willis* v. *Baker,* 75 Ohio St. 291 [79 N. E. Rep. 466]; *Crim* v. *Crim,* 162 Mo. 544 [63 S. W. Rep. 489; 54 L. R. A. 502; 85 Am. St. Rep. 521]; *Radcliffe* v. *Biles,* 94 Ga. 480 [20 S. E. Rep. 359]; *Jenkins* v. *Pye,* 12 Pet. 241 [9 L. Ed. 1070]; *Thornber* v. *Sheard,* 12 Beav. 589; *Noble* v. *Moses,* 81 Ala. 530 [1 So. Rep. 217; 60 Am. Rep. 175]; *Noble* v. *Moses,* 74 Ala. 604.

**HENRY, J.**

The plaintiff prosecutes error from final judgment rendered upon demurrer sustained to her second amended petition, wherein she prays cancellation of her real estate mortgage to the defendant, given under alleged parental duress, while she still lived with her parents, soon after she attained her majority and to secure a loan to her father. She alleges defendant's actual knowledge of these facts, save the undue influence, which, she says, it either knew or by the exercise of ordinary care would have known. The parents were originally parties defendant, but were dismissed by the court below as improperly joined.

Under the principles laid down in *Berkmeyer* v. *Kellerman,* 32 Ohio St. 239, 253 [30 Am. Rep. 577], the petition here would be sufficient as against the parents, had the mortgage been given to them. At page 252, the opinion by Johnson, J., quotes approvingly from *Cocking* v. *Pratt,* 1 Ves. Sr. 400, that "the court will always look with a jealous eye upon a transaction between parent and child just come of age, and interpose if any advantage is taken." The fourth paragraph of the syllabus indicates moreover that the burden of proving the good faith of such transactions is upon him who is alleged to have profited unjustly from the fiduciary relation established.

But in *Jenkins* v. *Pye,* 37 U. S. (12 Pet.) 241 [9 L. Ed. 1070], it is held that a conveyance from child to parent is not *prima facie* fraudulent; whence it evidently follows that the burden of proof is on him who charges the fraud.

In this forum we are of course bound by the English rule, so far as it is sanctioned by our state Supreme Court, in preference to the so-called American rule enunciated by the United States Supreme Court. Applying, therefore, the principles of *Berkmeyer* v. *Kellerman, supra,* to the case in hand, what duty, if any, rested upon the bank, knowing that it was lending money to the father upon the security of the child's property, and that a court, viewing the transaction with a jealous eye would call upon the father to vindicate its good faith? Manifestly the bank's duty was to use reasonable care to ascertain whether or not the father was acting *bona fide,* and whether or not the child was actuated only by her own free will.

Lane v. Trust Co.

The petition, however, alleges that by the exercise of such care the defendant would have discovered the undue parental influence under which the mortgage was executed, acknowledged and delivered. It is, therefore, chargeable with such knowledge as it would thus have acquired, and stands in no better position than the father himself.

It is no answer to this conclusion to say that the notary's certificate of acknowledgment cannot be varied by parol evidence; for the deed and acknowledgment are alike assailed directly for fraud. Nor is it an answer to say that the requirements of business should be held to relieve banks from the hazard and burden of such a rule. It cannot be true that banks will be greatly prejudiced by having to make reasonable inquiry as to the fact of undue influence in cases where they know that a fiduciary relation exists, and that the proposed transaction can stand only upon the footing of utmost good faith.

We do not hold that third parties acting in such a transaction must ascertain bad faith at their peril, but only that they must make reasonable inquiry when the known facts suggest improper advantage taken of a fiduciary relation. The practice of English banks, in having the person reposing confidence exhibit competent independent advice that he is free from undue influence before allowing a gift to his fiduciary to be consummated through the medium of a bank loan or the like, may not always be essential to the validity of gifts of this sort; but though the authorities do not go that far, the practice is manifestly a salutary one. The protection of the property rights of persons in actual or *quasi* wardship from the greed of their protectors is plainly paramount in importance to the mere convenience of banking houses in transacting business with persons thus related.

The principles herein approved were applied in a very similar and exceedingly well considered American case, *Noble* v. *Moses,* 81 Ala. 530 [1 So. Rep. 217; 60 Am. Rep. 175], reversing the previous conclusions of the court in the same case, *Noble* v. *Moses,* 74 Ala. 604. While that decision is perhaps not in accord with the current of American authority, we deem it to be the necessary corollary of the holding in *Berkmeyer* v. *Kellerman, supra.*

A majority of the court, therefore, our Brother Winch dissenting, hold that the judgment of the court of common pleas must be and the same is reversed, and the cause remanded.

**Marvin, J.,** concurs.

**WINCH, J.,** dissenting.

I dissent in this case because I believe that the petition does not

sufficiently charge the defendant with knowledge of the imposition and fraud alleged to have been practiced upon the plaintiff by her father.

Without resort to presumptions of law, the most the defendant is alleged to know is the relationship of the plaintiff to her father and that she was making a gift of her property to him. This she had a right to do and from certain authorities, two of which I shall mention, I believe that the presumption is in favor of the validity of such gifts.

One of the cases referred to is *Jenkins* v. *Pye,* 37 U. S. (12 Pet.) 240 [9 L. Ed. 1070], and part of the syllabus or head note, reads as follows:

"The complainants, as the ground to invalidate a deed made by a daughter of twenty-three years of age to her father, by which she conveyed the estate of her deceased mother to her father, he having a life estate as tenant by curtesy in the same, asserted that such a deed ought, upon considerations of public policy, growing out of the relations of the parties, be deemed void. * * * We do not deem it necessary to travel over all the English authorities which have been cited; we have looked into the leading cases and cannot discover anything to warrant the broad and unqualified doctrine asserted. All the cases are accompanied with some ingredient, showing undue influence exercised by the parent operating on the fears or hopes of the child; and sufficient to show reasonable grounds to presume that the act was not perfectly free and voluntary on the part of the child; and in some cases, although there may be circumstances tending, in some small degree, to show undue influence, yet if the agreement appears reasonable, it has been considered enough to outweigh slight circumstances, so as not to affect the validity of the deed. It becomes less necessary for the court to go into a critical examination of the English chancery doctrine on this subject; for, should the cases be found to countenance it, we should not be disposed to adopt or sanction the broad principle that the deed of a child to a parent is to be deemed, *prima facie,* void.

"To consider a parent disqualified to take a voluntary deed from his child, without consideration, on account of their relationship, is opening a principle at war with all filial, as well as parental, duty and affection; and acting on the presumption that a parent, instead of wishing to promote the interest and welfare, would be seeking to overreach and defraud his child. Whereas, the presumption ought to be, in the absence of all proof tending to a contrary conclusion, that the advancement of the interest of the child was the object in view, and to presume the existence of circumstances conducing to that result; such

Lane v. Trust Co.

a presumption harmonizes with the moral obligations of a parent to provide for his child, and is founded upon the same benign principle that governs cases of purchases made by parents in the name of a child. The natural and reasonable presumption in all transactions of this kind is, that a benefit was intended the child, because in the discharge of a moral and parental duty."

The opinion bears out all that is stated in the head note.

This case is quoted as "the leading case" on the subject in the case of *Towson* v. *Moore*, 173 U. S. 17 [19 Sup. Ct. Rep. 332; 43 L. Ed. 597], where it is also stated that Story, J., who sat in *Jenkins* v. *Pye, supra,* in the last edition of his commentaries on Equity Jurisprudence, stated the doctrine as follows, page 21:

"The natural and just influence which a parent has over a child renders it peculiarly important for courts of justice to watch over and protect the interests of the latter; and therefore all contracts and conveyances, whereby benefits are secured by children to their parents, are objects of jealousy, and if they are not entered into with scrupulous good faith, and are not reasonable under the circumstances, they will be set aside, unless third persons have acquired an interest under them,—especially where the original purposes for which they have been obtained are perverted or used as a mere cover. *But we are not to indulge undue suspicions of jealousy, or to make unfavorable presumptions as a matter of course in cases of this sort.*"

If the courts are not "to make unfavorable presumptions as a matter of course in cases of this kind," why should the bank be required to?

No answer to this question can be deduced from the statement found in the syllabus of *Towson* v. *Moore, supra,* that: "In the case of a child's gift of its property to a parent, the circumstances attending the transaction should be vigilantly and carefully scrutinized by the court, in order to ascertain whether there has been undue influence in procuring it," for that scrutiny is called forth by proper allegations of undue influence; a petition relying upon any presumption would be demurrable and invoke no scrutiny as to facts not presented by it.

So, here, the bank was not called upon to scrutinize this transaction, for there was nothing in it suggesting undue influence, if we are warranted in applying the presumptions suggested by the cases from which I have quoted.