UNITED STATES v. BOSTON SAND & GRAVEL CO.

Circuit Court of Appeals, First Circuit.
January 17, 1928.

No. 2170.

1. Appeal and error ⬥1094(2)—Concurrent findings of two tribunals of fact should not generally be reversed, unless clearly erroneous.

As a usual rule, the concurrent results of two tribunals of fact should not be reversed, unless clearly shown to be erroneous.

2. Collision ⬥125—Finding that libelant; abandoning vessel after collision, acted with reasonable diligence to prevent total loss, held proper under evidence, notwithstanding vessel's subsequent restoration.

In libel proceeding resulting from collision between vessels, finding of commissioner, affirmed by District Court, that libelant, abandoning vessel to insurer, acted with reasonable diligence in effort to prevent total loss, held proper under evidence, notwithstanding wreck was subsequently restored to seaworthy condition by purchaser.

3. Collision ⬥125—Finding that vessel abandoned after collision was worth $95,000, held not erroneous, as fixing excessive valuation, where vessel as restored sold for $60,000.

Finding of commissioner in libel proceeding, affirmed by the District Court, that value of vessel abandoned after collision was $95,000, held not erroneous, as fixing excessive valuation, where collision took place during August, 1918, when abnormal values attached to all kinds of seagoing vessels, and vessel as restored sold for $60,000 in December 1920, months after drop in prices had begun.

Appeal from the District Court of the United States for the District of Massachusetts; Elisha H. Brewster, Judge.

Libel by the Boston Sand & Gravel Company against the United States. Decree confirming the report of a commissioner, which awarded damages for total loss of the vessel (16 F.[2d] 643), and the United States appeals. Affirmed.

A. Chesley York, Asst. U. S. Atty., of Boston, Mass. (Frederick H. Tarr, U. S. Atty., of Gloucester, Mass., on the brief), for the United States.

Foye M. Murphy, of Boston, Mass. (Viola B. Kneeland and Blodgett, Jones, Burnham & Bingham, all of Boston, Mass., on the brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. This admiralty appeal involves simply questions of fact as to the assessment of damages caused by a collision on August 9, 1918, between the government destroyer Bell and the steam lighter Cornelia, under the mandate of this court (7 F.[2d] 278), holding that both vessels were at fault and that the damages should be divided. The government now complains that the commissioner and the court below were wrong in holding the libelant justified in abandoning the Cornelia as a constructive total loss and that the Cornelia was then worth $95,000.

There is and can be no dispute as to the applicable rule of law. The Baltimore, 8 Wall. 377, 19 L. Ed. 463.

[1] The case was referred to one of the most experienced admiralty lawyers of this bar, who made an exhaustive and elaborate report. This report was, on exceptions by the government, carefully reviewed by the District Judge and affirmed. The case therefore falls under the usual rule that the concurrent results of two tribunals of fact should not be reversed, unless clearly shown to be erroneous. The Providence (C. C. A.) 98 F. 133; Towson v. Moore, 173 U. S. 17, 19 S. Ct. 332, 43 L. Ed. 597. Cf. Sternburg v. Cohen & Co. (C. C. A.) 254 F. 1.

[2] The evidence supports—it does not negative—the results reached. After spending several days in efforts to raise and save the

vessel, with the help of competent experts in such undertakings, the libelant and its insurance company both reached the conclusion that the cost of raising and repairing her would exceed the insurance, $30,000. The insurance company thereupon offered either to pay the libelant the full amount of the insurance—$30,000—taking an assignment of the libelant's interest in the wreck, or $25,000 in full settlement of all claims under the policy. The libelant accepted the offer of $30,000 and assigned its interest to the insurance company. A little later John I. Snow, of Rockland, Maine, bought the wreck for $5,000, raised her, expended some $22,000 in raising and repairing her, and, in December, 1920, sold her for $60,000, out of which he paid a commission of $10,000.

The government's complaint is really grounded on Snow's success in raising and restoring her to a seaworthy condition. But this is not a sound legal ground for challenging the honest conclusions, reasonably reached by the libelant and the insurance company, under the advice of men experienced in such undertakings and having every motive to save the vessel. The commissioner's finding, affirmed by the court below, that libelant "acted with reasonable diligence in its efforts to prevent the total loss," must be here affirmed.

[3] Nor is there merit in the government's contention of error in the finding of $95,000. This record shows, and it is probably a matter of common knowledge, that at this time— August, 1918, before the outcome of the war was determined, months before the Armistice —abnormal values attached to practically all kinds of seagoing vessels. In Standard Oil Co. v. Southern Pacific Co., 268 U. S. 146, 158, 45 S. Ct. 465, 468 (69 L. Ed. 890), the Supreme Court described price conditions on vessels as follows:

"In August, 1918, the immediate demand for ships was greater than the supply, the shipyards were working to full capacity, wages and prices were high, the trend of construction costs was upward, and the element of time was of the utmost importance."

Analyzing the evidence in the light of applicable conditions, we find no support for the government's contention that the commissioner and the court below were wrong in finding that on the day of the collision the Cornelia was worth $95,000. The commissioner deducted the $5,000 received from Snow, and added $1,084.68 for expense items not in dispute. If the vessel, restored, was worth $60,000 in December, 1920—months after the great drop of prices had begun, and

more than two years after the Armistice—it is easy to believe her market value in August, 1918, was $95,000.

The decree of the District Court is affirmed.