**TERRY et al. v. PRAIRIE OIL & GAS CO. et al.** *

No. 7667.

Circuit Court of Appeals, Fifth Circuit.

May 29, 1936.

*Rehearing denied July 13, 1936.

844

John J. Yowell, of Chicago, Ill., for appellants.

H. L. Adkins and George I. Shannon, both of Amarillo, Tex., Walter David, of Borger, Tex., and Douglas H. Jones, of St. Louis, Mo., for appellees.

Before FOSTER and SIBLEY, Circuit Judges, and STRUM, District Judge.

FOSTER, Circuit Judge.

On July 21, 1930, appellants, Robert G. Terry, Thomas J. Terry, Samuel G. Terry, Frank Terry, Ruth Chambers, and Florence Jones, the last two named joined by their husbands, brought this suit against Diana Shaw, Otis L. Clonts, F. M. Ryburn, H. C. Pipkin, S. H. Madden, Otis Trulove, J. M. Huber Company, and Prairie Oil & Gas Company, the last two named being corporations, to establish their rights and title to an undivided $^{11}\!/_{24}$ interest in a section of land in Hutchinson county, Tex., known as Survey 27, Block Y, in Jack District, containing some 640 acres, and more fully described in the bill. The bill prayed that various conveyances to the defendants be removed as clouds upon the title of plaintiffs; that their title to $^{11}\!/_{24}$ interest in the land be quieted; and that the defendants be required to account for $^{11}\!/_{24}$ of the market value of oil and gas produced and marketed

from the land. The answers of defendants put plaintiffs to their proof and pleaded laches and various statutes of limitations. The appeal is brought up on the pleadings and various exhibits annexed to and filed therewith and the findings of facts by the District Court. None of the evidence before the District Court except the exhibits made part of the pleadings is brought up.

The following material facts appear from the record: In 1922 the fee-simple title to the land was in plaintiffs and Diana Shaw in the following proportions: Diana Shaw $\frac{1}{2}$; Florence Jones $\frac{1}{4}$; Robert G., Thomas J., Samuel G., and Frank Terry and Ruth Chambers each $\frac{1}{24}$. William G. Terry, not a party to the suit, was the owner of the remaining undivided $\frac{1}{24}$ interest. All the just-named parties deraign title through Thomas Terry, then deceased, who had received a patent to the section from the state of Texas.

A suit was instituted in the District Court of Hutchinson county, Tex., by C. T. McMurtry and others against Diana Shaw and the unknown heirs of Thomas Terry, to recover title and possession of the land. Judgment was entered by the state court in that suit in favor of plaintiffs. In March, 1922, Diana Shaw appeared through her attorneys in that suit and succeeded in having the judgment set aside. The suit was then removed by her to the Federal District Court for the Northern District of Texas, where it took docket No. 150 in equity. Diana Shaw claimed to be the sole owner of the land in fee simple, and in July, 1923, judgment was entered in cause No. 150, in her favor, decreeing her to be the sole owner of the land. On April 11, 1922, prior to the entry of said judgment, Diana Shaw had executed a deed to her attorneys of record conveying to them an undivided $\frac{1}{2}$ interest in the land in the following proportions: Otis L. Clonts $\frac{1}{4}$; S. H. Madden, Otis Trulove, F. M. Ryburn, and H. C. Pipkin each $\frac{1}{16}$. This deed was filed of record January 30, 1924, after the rendition of the judgment.

On May 14, 1924, Diana Shaw and her transferees executed an oil and gas lease in the usual form on all the land to Prairie Oil & Gas Company, retaining a royalty of $\frac{1}{8}$ in the oil and gas produced and saved from the lease. Thereafter Otis Trulove and his wife sold and conveyed all his interests in the land to the J. M. Huber Company. The lease to the Prairie Oil & Gas Company was duly recorded in Hutch-

inson county on July 12, 1924, more than five years before this suit was brought, and the conveyance to the Huber Company was also duly recorded on January 10, 1929.

On May 14, 1924, the same day the lease was executed, Diana Shaw and her transferees entered into an agreement with the Prairie Oil & Gas Company which recited that Diana Shaw and the others were owners in fee simple of the land and it was agreed that the Prairie Oil & Gas Company should have the option to purchase all the oil produced from the premises and that all the expense for development and operation upon the land should be advanced by the oil company for the joint account of the parties to the agreement, the net profits to be divided ¼ to the lessors and ¾ to the lessee. The joint account was to be charged with $16,000, a bonus paid for the lease, but the ⅛ royalty was excluded. Diana Shaw died during the pendency of this suit, and her legal representative was substituted. S. H. Madden had also died, and his widow and heirs were made parties to the suit in his stead.

The District Court found that a very short time after execution of the oil and gas lease and the joint agreement, in the summer of 1924, the Prairie Oil & Gas Company went into actual possession of the land, which at that time was inclosed by a fence, and began operations, exploring for minerals, making expensive and permanent improvements, and drilling five wells, one of which produced oil and the other four gas; that continuously from that time, agents, servants, and employees of the parties to the joint agreement were upon the land prosecuting the drilling operations; that the taxes, state, county, and otherwise, maturing annually against the land and the permanent improvements were paid, including those for the year 1924, before becoming delinquent, by and on behalf of all the defendants in the suit; and that the defendants have been in open, notorious, and hostile possession of the land and the minerals contained therein and the surface easement created by the mineral lease and the operating agreement since the summer of 1924, claiming title thereto adverse to all persons, including complainants, all defendants except Diana Shaw claiming under written instruments duly of record, and Diana Shaw claiming and asserting title under the decree entered in cause No. 150 and under the mineral lease and operating agreement.

The court further found that in the suit in the state court Diana Shaw had knowingly testified falsely that she was the sole owner of the land; and that none of the complainants had learned of the litigation with reference to the land or had actual knowledge that they had inherited an interest in the land until a few weeks before this suit was instituted, except Thomas J. Terry and Samuel G. Terry, who were barred by laches.

There was judgment rejecting the demands of plaintiffs as to the mineral rights claimed and quieting the title of all defendants thereto; setting aside the judgment in suit No. 150 as a cloud on title of plaintiffs; quieting the title of Florence Jones, Robert G. Terry, Frank Terry, and Ruth Chambers to the surface estate in their respective undivided shares but rejecting the claims of Thomas J. Terry and Samuel G. Terry, as barred by laches, and vesting their 2/21 undivided interests to the surface estate in Diana Shaw, through her legal representative. The rights of plaintiffs and Diana Shaw to a mutual accounting were reserved to them.

It is plain that Otis Trulove and the other grantees in the deed from Diana Shaw acquired full title to an undivided one-half of the property in fee simple as she was undoubtedly the legal owner of that much of the property, when she conveyed to them. This is true as to the Prairie Oil & Gas Company in respect of its title to an undivided one-half of the mineral rights acquired from these transferees by the lease. It is also clear that the J. M. Huber Company, holding its entire title from Otis Trulove, one of the grantees in the deed, from Diana Shaw, has full and complete title. It is not necessary to invoke any statute of limitations in support of so much of the title of these defendants.

The title acquired by the Prairie Oil & Gas Company from Diana Shaw, on the undisputed facts, comes clearly under the provisions of the statute of limitations of five years pleaded. Article 5509, Tex.Rev.Civil Statutes 1925. So far as it applies to the facts in this case the statute is as follows: "Every suit to recover real estate as against a person having peaceable and adverse possession thereof, cultivating, using or enjoying the same, and paying taxes thereon, **if** any, and claiming under a deed or deeds duly registered, shall be instituted within five years next after cause of action shall have accrued, and not afterward."

Appellants, contend, however, that by purchasing from Diana Shaw, the other defendants became cotenants with them; that a cotenant is not obliged to search the records to ascertain whether an adverse title to the whole property is asserted by the other cotenants; and that since the District Court found that none of them except Thomas J. Terry and Samuel G. Terry had actual knowledge of the transfers until a few weeks prior to the filing of the suit, their cause of action did not accrue until they had actual knowledge.

■ It may be conceded that as abstract propositions the contentions of appellants are supported by some of the authorities cited. However, we need not discuss the cases relied upon as they are not in point. As applied to the facts in this case the rule in Texas is stated in Olsen v. Grelle, 228 S. W. 927, an opinion by the Commission of Appeals, judgment adopted by the Supreme Court, and the following authorities: McBurney v. Knox (Tex.Com.App.) 273 S. W. 819; Long v. McCoy (Tex.Civ.App.) 294 S.W. 633; Welch v. Armstrong (Tex. Civ.App.) 62 S.W.(2d) 335; Orr v. Armstrong (Tex.Civ.App.) 81 S.W.(2d) 710. From the just-cited authorities it is clear that where a cotenant claims the entire property and executes a deed to a third person, who records his deed and goes into notorious and adverse possession, using the property and paying taxes before delinquent, it amounts to a disseisin and ouster of the cotenants and limitation begins to run from the date of recording the deed.

■ Diana Shaw had full title to an undivided one-half of the land in fee simple and also apparent title to the entire property by virtue of the judgment in suit No. 150. The validity of her transfer to her attorneys is not challenged. The Prairie Oil & Gas Company is not shown to have been guilty of any fraud in procuring its title nor to have had any knowledge, actual or constructive, that Diana Shaw was not the true owner of the title asserted by her. It follows that the judgment rejecting the claims of appellants and quieting the title of Otis L. Clonts, S. H. Madden, Otis Trulove, F. M. Ryburn, H. C. Pipkin, the Prairie Oil & Gas Company, and the J. M. Huber Co. was right.

■ The issues as between appellants and Diana Shaw are somewhat more complicated. The judgment does not award appellants any interest in the mineral rights.

Diana Shaw did not acquire title by the lease and the operating agreement. She merely endeavored to retain one-half of the one-eighth royalty in the oil and gas she claimed by virtue of the judgment. The judgment in suit No. 150 recognized her title to the land and quieted it as against the title set up by the plaintiffs in that suit but it did not adjudicate any rights as between her and appellants. We are not aware of any decisions of the Texas courts in point but we do not consider the judgment to be a deed within the contemplation of the statute of limitations above quoted. See Tiffany, Real Property (2d Ed.) § 555. Therefore, that statute did not run in her favor. Furthermore, since the decree sets aside the judgment in suit No. 150 for her fraud, she can claim nothing under that judgment.

■ It is fundamental that the plea of laches is not controlled by limitation or mere passage of time and always presents a question of fact. In this case the finding of the District Court was that Thomas J. Terry and Samuel G. Terry "have for a long time had such knowledge with reference to the subject matter involved and of the court proceedings had in this case as to be barred by laches from prosecuting this suit." And that is all. It must be remembered that Diana Shaw was guilty of actual fraud in procuring the judgment relied upon to divest appellants of their title. In McIntire v. Pryor, 173 U.S. 38, 19 S.Ct. 352, 43 L. Ed. 606, the question of laches is elaborately discussed and many authorities reviewed. At page 54 of 173 U.S., 19 S.Ct. 352, 43 L.Ed. 606, it was said, substantially, in cases of actual fraud a delay even greater than that permitted by the statute of limitations is not fatal to the plaintiff's claim. In the leading case of Michoud v. Girod, 4 How. 503, 11 L.Ed. 1076, a case of actual fraud, a suit filed 36 years after the commission of the fraud was held not to be barred by laches. There is no doubt that the title to one-half of the land recovered by Diana Shaw by the judgment in suit No. 150 remained in appellants. In Saxlehner v. Eisner & Mendelson Co., 179 U.S. 19, at page 39, 21 S.Ct. 7, 14, 45 L.Ed. 60, it was said "in cases of actual fraud, as we have repeatedly held, * * * the principle of laches has but an imperfect application." And again, "in a case of an active and continuing fraud like this, we should be satisfied with no evidence of laches that did not amount to proof of assent or acquiescence." The findings of the District Court go no

further than to hold that Thomas J. Terry and Samuel G. Terry had knowledge of the adverse claim of Diana Shaw and cannot be extended by implication to a finding that they had consented or acquiesced therein. The plea of laches is not sustained by the record.

It follows that the judgment holding that Thomas J. Terry and Samuel G. Terry were barred by laches from bringing this suit, awarding Diana Shaw title to an undivided one-half interest in the mineral estate and $\frac{2}{24}$ of the surface estate, and rejecting the claims of appellants as to any interest in the mineral estate, was wrong, and appellants are entitled to recover title to both the surface and mineral estate in the various proportions in which they inherited, subject, of course, to the oil and gas leases in favor of the Prairie Oil Company and the J. M. Huber Company.

The judgment recites that it appears Diana Shaw had paid taxes on the land for something more than forty years and might have collected surface lease money but the evidence is not sufficient to permit the account to be audited. This might be construed as limiting the mutual right of accounting to these items. It is plain that the transfer by Diana Shaw of her undivided one-half of the land to her attorneys was in payment of fees for their services in procuring the setting aside of the judgment in the state court and ultimately defeating the claims of plaintiffs in that suit. As the services of these attorneys inured to the benefit of all the cotenants, it would be inequitable to compel Diana Shaw to bear the entire expense. It is also possible that Diana Shaw may have received something from the mineral estate. It would be proper to include these items in an accounting. If an accounting is had it should be entirely unrestricted.

Appellants complain of the division of costs by the District Court. The awarding of costs or their division between the parties is within the sound discretion of the court in a suit in equity. Du Bois v. Kirk, 158 U.S. 58, 15 S.Ct. 729, 39 L.Ed. 895. We find no occasion to disturb the ruling in that respect.

The judgment will be amended to recognize appellants as entitled to both the surface and mineral estate in the land in the following undivided proportions: Florence Jones, $\frac{1}{4}$, and the others each an undivided $\frac{1}{24}$, subject to the oil and gas lease to the Prairie Oil & Gas Company and the operating agreement, with full reservation of the right to an accounting between themselves and Diana Shaw, through her legal representative. As so amended the judgment is affirmed. Costs of appeal to be divided equally between appellants and Diana Shaw, through her legal representative.

Amended and affirmed.