## In re MICHIGAN S. S. CO.

(District Court, N. D. California. November 21, 1904.)

### No. 12,820.

1. SHIPPING—LIMITATION OF LIABILITY—CONSTRUCTION OF STATUTE.

The right of the owner of a vessel to a limitation of liability under the provisions of Rev. St. §§ 4283–4285 [U. S. Comp. St. 1901, pp. 2943, 2944], does not depend upon the fact that the vessel is actually engaged upon a voyage at the time of the doing of the act or the happening of the event against which the owner seeks to limit his liability, but the statute applies equally to a vessel at a dock in her home port, where she is being altered and refitted, and where she has remained for several months.

2. NEGLIGENCE—LIABILITY FOR INJURY—PROXIMATE CAUSE.

A steamer was lying at the dock of a contractor, which was refitting her to burn oil instead of coal. After a tank had been completed, but before it had been equipped with ventilators, the owner of the vessel caused it to be partially filled with crude petroleum of a low and inflammable grade. While a workman in the employ of the contractor was drilling a hole in the top of the tank he placed a lighted candle within 2½ inches of where he was drilling, and the result was an explosion of the tank, by which a number of such workmen were killed. *Held*, that while the owner of the vessel may have been negligent in filling the tank at the time and in using an inferior and dangerous grade of oil, the workman was clearly negligent, it being a matter of common knowledge that petroleum will give off gas which will explode under certain conditions when brought in contact with a flame, and that his carelessness was the proximate cause of the explosion, for the consequences of which to the contractor's employés the vessel owner was not liable.

3. MASTER AND SERVANT—INJURY TO SEAMAN THROUGH NEGLIGENCE OF WORKMAN—LIABILITY OF SHIPOWNER.

A shipowner which contracts for repairs owes an active duty to the seamen on board to use reasonable diligence to see that they are not subjected to danger by reason of the negligent manner in which the work is done, and is liable for their death or injury resulting from its failure to perform such duty.

In Admiralty. Proceeding for limitation of liability.

Nathan H. Frank, for petitioner.

William Denman, for claimants.

DE HAVEN, District Judge. This is a petition filed by the Michigan Steamship Company, a corporation, owner of the steamer Progresso, praying for a decree exempting it from liability for any loss or damage resulting from an explosion which occurred on that steamer on December 3, 1902, or, in the event that it shall be adjudged liable for such damages, that its liability be limited as provided in sections 4283–4285, Rev. St. [U. S. Comp. St. 1901, pp. 2943, 2944]. Many claims have been filed. The claimants have filed answers, in which they contest the right of the petitioner to a decree exempting it from liability on account of the matters set forth in the petition, or to any limitation of its liability. These claims may be divided into two classes:

¶ 1. Limitation of liability of vessel owner, see note to The Longfellow, 45 C. C. A. 387.

133 F.—37

First, the claims of employés of the Fulton Ironworks for damages on account of personal injuries sustained by them as a result of the explosion, and the claims of heirs of other employés of the Fulton Ironworks who were killed by the explosion; and, second, the claims of heirs for damages on account of the death of certain seamen who were on board of the Progresso at the time of the explosion, and killed. These seamen were employés of the petitioner. There is no substantial conflict in the evidence, and it appears therefrom that on December 3, 1902, the Progresso was lying at the dock of the Fulton Ironworks, in the harbor of San Francisco, and had been for some months undergoing certain alterations in her hold, made necessary by reason of the construction therein of tanks for the carriage of oil to be used as fuel. This work was being done by the Fulton Ironworks under contract, and had so far progressed that the fuel tank had been tested and accepted. This tank had a capacity of about 900 barrels of oil, and at the time of the explosion contained between 300 and 400 barrels of oil. The tank was perfectly tight, no ventilators having been installed therein. At the time of the explosion certain employés of the Fulton Ironworks were engaged in putting up stanchions for the purpose of supporting the upper deck. These stanchions, according to the construction plans, were to rest on top of the fuel tank, and it was necessary, and the plans contemplated, that holes should be drilled in the tank in order to properly secure them. At the time of the explosion one McGinley, an employé of the Fulton Ironworks, was engaged in drilling these holes, and while thus engaged he had a lighted candle which was placed within about 2½ inches of the hole he was drilling. There was an electric light used by another employé nearby, and McGinley could have had such a light if he had applied to the electrician of the Fulton Ironworks. The electric lights as well as the candles used were supplied by the Fulton Ironworks, and both electric lights and candles had been previously used by the men during the progress of the work. The oil was placed in the tank on Monday, and on the morning of the Wednesday following the explosion occurred.

The most reasonable conclusion to be drawn from the evidence is that the real cause of the explosion was that gas escaped from the hole drilled into the tank by McGinley and came in contact with the lighted candle used by him. The oil was crude petroleum; was very light, and flashed at a temperature of 85 degrees—that is, at that temperature it would give off gas so readily as to form an explosive mixture, which would flash or explode when brought in contact with a flame. Crude petroleum which will flash at so low a temperature is not regarded as safe as petroleum oil having a higher flash test; and there was at the date of the explosion an ordinance of the city and county of San Francisco making it a misdemeanor "to use petroleum oil for fuel, heating, lighting, or illumination purposes, within the city and county of San Francisco, unless the same will stand a fire test of 110 degrees Fahrenheit, before it will flash or emit an inflammable vapor."

1. It is contended by the claimants that the sections of the Revised Statutes providing for the limitation of the liability of the owners of vessels is not applicable in this case, because the Progresso at the time of the explosion was not engaged in making a voyage, but was in

the custody of her owners at her home port, and had been for several months undergoing the extensive repairs necessary to change her from a burner of coal to a burner of oil. I do not think this contention can be sustained. Section 4283 of the Revised Statutes [U. S. Comp. St. 1901, p. 2943] provides:

"The liability of the owner of any vessel * * * for any act, matter, or thing, lost, damage, or forfeiture, done, occasioned, or incurred, without the privity, or knowledge of such owner or owners, shall in no case exceed the amount or value of the interest of such owner in such vessel, and her freight then pending."

The Progresso was certainly a vessel within the meaning of this statute. She was about to proceed upon her trial trip, and the fact that she was then, and for some time had been, lying at a dock, while her hold was being divided into compartments and tanks installed therein for the carriage of fuel oil, did not deprive her of her character as a vessel; nor does the statute make the right to a limitation depend upon the fact that the vessel is actually engaged in the prosecution of a voyage at the time of the doing of the act or the happening of the event against which the owner seeks to limit his liability. In this case the alleged wrong of the libelant and the damages resulting therefrom occurred on the Progresso while she was on the navigable waters of the Bay of San Francisco.

2. The next question to consider is whether the employés and heirs of employés of the Fulton Ironworks have any cause of action against the libelant for the damages sustained by them. The grounds upon which such liability is asserted are the alleged negligence of the libelant in these respects: First, in placing oil in the fuel tank before any ventilators were installed therein; second, in placing therein crude petroleum oil, which would flash at a temperature of 85 degrees, and in not warning the men who were working on the steamer of the dangerous condition thus created. It may be conceded that the libelant was guilty of negligence in placing oil which would flash at the low temperature of 85 degrees in a tank not properly equipped with ventilators; but still, unless such negligence was the proximate cause of the explosion, it would seem, under all of the authorities, that it is not liable to third persons for damages resulting to them from such explosion. It is not sufficient to render the libelant responsible in damages that its negligence was only the antecedent cause of the explosion, but it must also have been the proximate cause. It is sufficiently accurate for the purposes of this case to say that negligence "cannot ordinarily be said to be the proximate cause of an injury when the negligence of another independent human agency has intervened and directly inflicted the injury." 16 Am. & Eng. Ency. (1st Ed.) p. 446. This rule is nowhere more clearly stated than by Judge Cooley in his work on Torts. That author says:

"It is not only requisite that damage, actual or inferential, should be suffered; but this damage must be the legitimate sequence of the thing amiss. The maxim of the law here applicable is that in law the immediate, and not the remote, cause of any event is regarded, and in the application of it the law rejects, as not constituting the foundation for an action, that damage which does not flow proximately from the act complained of. In other words, the law always refers the injury to the proximate, not to the remote, cause.

The explanation of this maxim may be given thus: If an injury has resulted in consequence of a certain wrongful act or omission, but only through or by means of some intervening cause, from which last cause the injury followed as a direct and immediate consequence, the law will refer the damage to the last or proximate cause, and refuse to trace it to that which was more remote." Cooley on Torts (1st Ed.) p. 68.

Now, in this case the evidence points with great certainty to the fact that the cause of the explosion was the act of McGinley in drilling a hole into the tank by means of which gas escaping therefrom came in contact with a lighted candle used by him at that time and placed in close proximity to the hole which he was drilling; and that this was an act of great carelessness in him does not seem to me to admit of doubt. I think it may be fairly inferred from the evidence that he and all of his fellow workmen knew there was oil in the tank, and, although he was not specially warned of the danger of using a lighted candle in such close proximity to the hole drilled by him, it must be presumed that, if he had stopped to consider for a moment, he would have known of such danger. That petroleum will give off gas, and that under certain conditions that gas will explode when brought in contact with a flame, is matter of common knowledge. There can be no presumption that McGinley did not have this knowledge. It is true the evidence does not show that he was informed that the oil in the tank would flash at 85 degrees, but he must have known there was fuel oil in the tank, and, no matter what might have been its flashing point, he was guilty of negligence in placing a lighted candle within 2½ inches of the hole he was drilling, and from which the gas escaped. The libelant did not owe any duty to the employés of the Fulton Ironworks to keep watch over them, and see that they did not render the place in which they were working unsafe by reason of the negligent manner in which they might prosecute such work.

3. In regard to the claims of the heirs of those employed as seamen on the Progresso, my conclusion is that the libelant owed to such seamen the active duty of providing for them a safe place in which to work. Of course, its obligation was only to use reasonable diligence in this respect, but, having contracted with the Fulton Ironworks to work on the Progresso, it was a duty which the libelant owed its own employés to see that they were not subjected to risks unknown to them, and which placed their lives in danger. It was the duty of the libelant to know whether its own servants were placed in danger by the manner in which the work contracted for by it was being performed. It follows from these views that the petitioner is liable for the damages claimed by the heirs of the seamen employed by it, and also entitled to a decree limiting its liability as to such damage, but is not responsible for the damages claimed by the employés and heirs of the employés of the Fulton Ironworks.

Let a decree be entered in accordance with this opinion, and the case placed upon the calendar for hearing upon the question of damages.