## THE C. H. NORTHAM.

(District Court, D. Massachusetts. March 30, 1909.)

### No. 88.

SHIPPING (§ 204*)—LIMITATION OF LIABILITY—"VESSEL" TO WHICH LIMITATION APPLIES.

A steamer, which had been taken on shore by her owners for the purpose of being dismantled, and from which the masts and engines had been removed, so long as the dismantling process had not proceeded so far as to render her wholly incapable of being navigated as a tow or otherwise, continued to be a "vessel," within the meaning of Rev. St. § 4289, as amended by Act June 19, 1886, c. 421, § 4, 24 Stat. 80 (U. S. Comp. St. 1901, p. 2945); and her owners may maintain proceedings for a limitation of liability for damage done by her, where she floated and went adrift in a storm without their knowledge.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 639, 640; Dec. Dig. § 204.*

For other definitions, see Words and Phrases, vol. 8, pp. 7297–7301.

Limitation of liability of vessel owner, see note to The Longfellow, 45 C. C. A. 387.]

In Admiralty. Petition for limitation of liability by Thomas Butler and others, as owners of the steamer C. H. Northam. On motion to dismiss for want of jurisdiction. Motion denied.

See, also, 181 Fed. 985, 986.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Carver, Wardner & Goodwin, for petitioners.

Edgar O. Achorn, for claimants.

DODGE, District Judge. In this case there has been a reference to a master to ascertain the value of the C. H. Northam and her pending freight, in order that the court may fix the amount of stipulation to be given therefor. The present motion to dismiss is based partly upon the allegations in the petition and partly upon facts found by the master in his report.

It is contended that upon these allegations and findings the C. H. Northam cannot properly be considered a "vessel," within the meaning of the limited liability schedules. When the damage was done which is set forth in the petition, the C. H. Northam was adrift without any one on board. Her owners had left her on shore at Wood Island. In a storm she floated and went adrift without their knowledge.

Her owners had taken her to Wood Island to dismantle her, and were engaged in doing so at the time. Her masts had been removed, also her engines, and she was entirely without motive power of her own. Part of her machinery still remained on board the hull, with a derrick and dummy engine, belonging to her owner, which were being used in the dismantling process. Under these conditions, she drifted all the way across from Wood Island to Harbor View, and was afterwards towed back to Wood Island. She was, therefore, whatever her deficiencies for use as a barge, capable of floating, of carrying cargo, and of being towed from place to place. Since canal boats, barges, and lighters are vessels for the purposes of the limited liability statutes, by the express terms of Rev. St. U. S. § 4289, as amended in 1886 (Act June 19, 1886, c. 421, § 4, 24 Stat. 80 [U. S. Comp. St. 1901, p. 2945]), it is difficult to see why, so far as capacity for use in navigation is concerned, she is not to be regarded as a vessel within the meaning of those statutes. In Re Eastern Dredging Co., 138 Fed. 942, a dumping scow was held to be a vessel in that sense. That a wreck, kept afloat only by steam pumps, and capable of navigation only by being towed, may be a vessel, in the sense referred to, is settled in Craig v. Continental Ins. Co., 141 U. S. 638, 12 Sup. Ct. 97, 35 L. Ed. 886.

It is urged that the question is one to be determined according to the intention or absence of intention of her owners to use her as a vessel, and that in this case the owners had given up all intention of so doing, and were proceeding to dismantle her as rapidly as possible, in order to get at the metal which she contained by burning her. Admitting these to be the facts, I am unable to believe that she ceased to be a vessel, for the purposes of the statutes referred to, until the dismantling process had gone so far as to render her wholly incapable of navigation. However high up on the beach she may have been placed, and whether or not holes had been bored in her bottom to let out water which she contained, that stage of the process had not been reached, and the owners might still have changed their plans without having to make a new vessel out of a mere wreck. If negligence in her management, without the owners' privity and knowledge, did in fact cause:

the damage against which limitation of liability is sought, the negligence did not differ in character, so far as appears, from the negligence which would have been the cause of the same damage if the craft placed on the beach and negligently permitted to go adrift had been in every respect a complete vessel.

The motion to dismiss is denied.