984

## THE EASTLAND.

### In re ST. JOSEPH–CHICAGO S. S. CO.

### BISHOP et al. v. ST. JOSEPH–CHICAGO S. S. CO.

No. 5257.

Circuit Court of Appeals, Seventh Circuit.

Aug. 7, 1935.

Rehearing Denied Sept. 18, 1935.

Justus Chancellor and Harry W. Standidge, both of Chicago, Ill., for appellants.

Frederick L. Leckie, of Cleveland, Ohio, and Robert Branand, Jr., of Chicago, Ill., for appellee.

Before EVANS, SPARKS, and FITZHENRY, Circuit Judges.

FITZHENRY, Circuit Judge.

Appellee was the owner of the steamer Eastland, which capsized in the Chicago river at Chicago, July 24, 1915, and 835 passengers drowned. She had been chartered on that date to the Indiana Transportation Company, for the purpose of carrying employees of the Western Electric Company on their annual picnic to Michigan City, Ind. Appellee filed its petition praying for limitation of liability under sections 183–185 of 46 USCA, c. 8.

The administrator of the estate of one of the victims of the accident answered November 18, 1915, and filed interrogatories. In that answer appellant resisted the limitation and attempted to assert a counterclaim based upon the Illinois Personal Injury Act, c. 70, §§ 1 and 2 (Smith-Hurd Rev. St. Ill. 1933, c. 70, §§ 1, 2, Cahill's Ill. Rev. Stat. 1933, c. 70, pars. 1, 2, p. 1569), and a claim of the Great Lakes Towing Company for salvaging the vessel, in the sum of $34,500, was resisted. Other defenses and all the counterclaims were based upon the alleged negligence of appellee.

Answers to interrogatories were filed by the petitioner, and on July 24, 1916, a number of additional claims were filed on behalf of appellants. These claims charged that the damages were caused "by the tipping over of the Steamer Eastland * * * by reason of the negligence on the part of the above named petitioner and without fault on the part of the deceased, while said deceased was a passenger on said steamer, * * *."

In December, 1927, the answers for 353 estates were filed as well as those for 15 respondents by their next friend. They purported to answer the material allegations in the petition for limitation, but made no claim for affirmative re-

lief. In November, a demand for a trial by jury was made. On the same day the District Court entered an order overruling exceptions to the answers of respondents, denied respondents' request for a jury trial, and entered an order appointing Lewis F. Mason as special commissioner to take proofs and report his findings of fact and conclusions of law to the court. Requests for findings of fact and holdings of law were submitted by the respective parties at the conclusion of the hearing. Fifty items of fact were requested on behalf of respondents. Many of those requests were for holdings that petitioner was guilty of certain acts of negligence causing the capsizing

The commissioner filed his report. Respondents filed eighty-six objections to the commissioner's report. They were overruled by the commissioner and the said report confirmed by the court. On December 21, 1933, the final decree was filed. James F. Bishop filed his affidavit that in all of the cases in which he appeared he was the public administrator of, in and for Cook county, Ill. March 21, 1934, respondents prayed an appeal and filed twenty-five assignments of error, covering questions of the omission and exclusion of testimony. Running all through them is the contention that the court erred in not finding that the accident was caused by reason of the negligence of petitioner; that respondents should have had a jury trial; that the findings and order of the court are contrary to law and the evidence. There is no showing in the record why the disposition of the case was not pushed by the parties for a period of ten or twelve years.

The report of the commissioner contains a condensed statement of the case, from which we quote:

"The Steamer Eastland, a passenger boat, tipped over and sank at the dock that it had been loading its passengers from on the morning of July 24, 1915. The boat had been loaded to her permitted capacity of twenty-five hundred passengers when the catastrophe occurred which resulted in the appalling loss of life of more than eight hundred persons.

"At the time the Eastland was under charter to the Indiana Transportation Company for the purpose of carrying employees of the Western Electric Company on their annual picnic to Michigan City, Indiana, and return. For this service her owner was to receive the sum of Five Hundred ($500.00) Dollars. The charter provided that the Eastland was to be the first boat loaded in order that she might return to Chicago in apt time to make her regular trip to St. Joseph, Michigan, which was scheduled for 2:00 P. M.

"The Steamer Eastland was a steel constructed vessel built at Port Huron, Michigan, in the year 1903. She was two hundred sixty-five feet long, about thirty-eight feet beam and nineteen feet molded depth. She was built under the rules of 'The Great Lakes Register,' and under the superintendency, insofar as her structure was concerned, of witness Horatio M. Herriman.

"The boat operated under a license to carry passengers out of Chicago from 1903 to 1907, and then was operated out of Cleveland until 1914. She was then purchased by the petitioner and brought back to Lake Michigan and operated during 1914 and until July 24, 1915, as an excursion boat out of the Chicago River across the lake to various points.

"Petitioner's Exhibit 1 of January 14, 1932, being a duly authenticated statement 'of the various passenger capacities that were assigned to the Steamer Eastland by local inspectors at Chicago and Grand Haven for the years during which she was operated in the Eighth District,' shows that during the year 1903 she was permitted a total of twenty-eight hundred passengers, in 1904 a total of thirty-three hundred passengers, and various amounts each year until July 2, 1915, certain new equipment was added to the boat and, based upon the inspection of July 10, 1914, a total of twenty-five hundred passengers was permitted. * * *

"Under the petition and libel a trustee was appointed by the Court, who immediately took possession of the boat as she lay in the Chicago River. Under authority of this Court a no-cure-no-pay contract was entered into for the raising of the steamer and removing the wreck from the path of navigation. The steamer was removed and thereafter, under order of Court, sold by the United States Marshal and the fund deposited in the Registry of the Court and paid out under order of Court. This fund is now exhausted."

The statute under which the St. Joseph-Chicago Steamship Company seeks to

limit its liability is set forth in the margin.* 46 USCA c. 8, §§ 183, 184 and 185.

The commissioner reported:

"One. That the Eastland tipped over while at the dock on July 24th, 1915, and caused an appalling loss of life through the negligence of the engineer in charge of the operation of her water ballast tanks, in that they were improperly handled and the water therein not properly distributed so as to give her stability.

"Two. That Martin Flatow was the representative of the petitioner at Chicago; that his duties as such were confined to the solicitation of passenger business and matters incident thereto; that he was not in any sense a managing officer within the meaning of the Statute providing for limitation of liability.

"Three. That on the morning of July 24th, 1915, and at the time of the disaster the Steamer Eastland was seaworthy in every respect, properly equipped and manned and fit for the carriage of passengers if properly handled.

"Four. That the negligence resulting in the capsizing and sinking of the Steamer Eastland on July 24, 1915, was not with the privity and knowledge of the petitioner, St. Joseph-Chicago Steamship Company, within the meaning of the Statutes conferring the right to limitation of liability.

"Five. That the petitioner, St. Joseph-Chicago Steamship Company as a matter of law and from the facts heretofore set forth is entitled to a decree limiting its liability in accordance with the prayer of its libel and petition to the extent of its interest in the Steamer Eastland at the time of the disaster."

Appellants' first assignment of error relates to the finding that the Limitation of Liability Act applied to this case. They now assert that the liability of appellee which they seek to enforce is one resting upon its personal contract, and that to such liability the act does not apply. In support of this contention, they cite the recent case of Cullen Fuel Co., Inc., v. W. E. Hedger, Inc., 290 U. S. 82, 54 S. Ct. 10, 78 L. Ed. 189.

■ Upon the evidence we would not be justified in disturbing the finding of the special commissioner, approved by the District Court, that the Eastland was in all respects seaworthy and hence that there was no breach of the contract. The implied contract of seaworthiness has been limited by the courts, in suits upon the personal contract of the owner, "to those of the nature of warranties where the obligation was to be performed by the obligor personally and * * * have not been extended to promises to do acts necessarily performed through the intervention of others." The No. 34 (C. C. A. 2) 25 F.(2d) 602, 607; The Ice King (C. C. A. 2) 261 F. 897; Capitol Transportation Co. v. Cambria Steel Co., 249 U. S. 334, 39 S. Ct. 292, 63 L. Ed. 631.

* § 183. Liability of owner not to exceed interest. The liability of the owner of any vessel, for any embezzlement, loss, or destruction, by any person, of any property, goods, or merchandise, shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred without the privity, or knowledge of such owner or owners, shall in no case exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.

§ 184. Apportionment of compensation. Whenever any such embezzlement, loss, or destruction is suffered by several freighters or owners of goods, wares, merchandise, or any property whatever, on the same voyage, and the whole value of the vessel, and her freight for the voyage, is not sufficient to make compensation to each of them, they shall receive compensation from the owner of the vessel in proportion to their respective losses; and for that purpose the freighters and owners of the property, and the owner of the vessel, or any of them, may take the appropriate proceedings in any court, for the purpose of apportioning the sum for which the owner of the vessel may be liable among the parties entitled thereto.

§ 185. Transfer of interest of owner to trustee. It shall be deemed a sufficient compliance on the part of such owner with the requirements of this chapter relating to his liability for any embezzlement, loss, or destruction of any property, goods, or merchandise, if he shall transfer his interest in such vessel and freight, for the benefit of such claimants, to a trustee, to be appointed by any court of competent jurisdiction, to act as such trustee for the person who may prove to be legally entitled thereto; from and after which transfer all claims and proceedings against the owner shall cease.

■ Appellants argue that the court erred in finding and decreeing that "at the time of the capsizing" of said steamer "she was in every respect seaworthy," and the findings of the court and the provisions of the decree in such regard are contradictory. They say: "Manifestly said findings in said report that improper handling of the ballast tanks of said steamer and improper distribution of water therein deprived her of 'stability' that she would have been 'seaworthy in every respect * * * if properly handled', and that she was 'seaworthy except insofar as the proper manipulation and handling of her ballast tanks may have constituted unseaworthiness', and said finding in said decree 'she was in every respect seaworthy', are contradictory and erroneous."

Our examination of the authorities cited by appellants to support this contention convinces us that they fail to distinguish between cases arising under the Harter Act, under which exemption cannot be claimed for damages occurring prior to the vessel's breaking ground upon her voyage, and where the duty upon the owner is to use due diligence to make the vessel seaworthy, with the limitation act here in question. Appellants contend that the defective ballasting was a condition which existed prior to the beginning of the voyage, hence the vessel was not seaworthy when the voyage commenced and the finding of the court that the vessel was not properly ballasted was inconsistent with the finding that it was in all respects seaworthy. In other words, any negligence which occurs prior to the beginning of the voyage they impute to the owner.

This point was raised in the case of The Galileo (C. C. A.) 54 F.(2d) 913, 914, which was affirmed by the Supreme Court and reported as Earle & Stoddart v. Ellerman's Wilson Line, 287 U. S. 420, 53 S. Ct. 200, 77 L. Ed. 403. Judge Swan, speaking for the Circuit Court of Appeals for the Second Circuit, said:

"Section 4282 is in substance section 1 of the Limited Liability Act of March 3, 1851 (9 Stat. 635 [46 USCA § 182]). It provides that no owner of a vessel shall be liable to make good any loss or damage to cargo caused by fire, 'unless such fire is caused by the design or neglect of such owner.' The phrase 'neglect of such owner' means negligence of the owner personally, or, in the case of a corporate owner, negligence of its managing officers or agents, and it is perfectly clear under the authorities that negligence of the ship's officers in causing a fire is not to be imputed to the owner so as to deprive him of the statutory immunity. [Citing cases.] So far as we are advised, in all cases where exoneration from liability under the fire statute has been denied, there has been proof that the fire was due to the negligence of the owner himself or of some representatives of the owner other than the ship's officers and crew. [Citing cases.]

"Conceding this to be the law when the ship is seaworthy at the commencement of her voyage, the libelants contend that the rule is different when she sets out in an unseaworthy condition and due diligence has not been used by the ship's officers to make her seaworthy. The libelants ask, in effect, that to the exception expressed in the statute, 'unless such fire is caused by the design or neglect of the owner,' we add as a further exception 'or unless such owner or his agents have failed to use due diligence to make the vessel seaworthy.' There is no language in the Limited Liability Act to justify such a judicial amendment. The requirement of due diligence to make the vessel seaworthy is expressly made a condition to claiming the benefits of the Harter Act (27 Stat. 445 [46 USCA §§ 190-195]), and lack of diligence by any agent of the owner may be imputed to the owner. Int. Nav. Co. v. Farr & Bailey Mfg. Co., 181 U. S. 218, 21 S. Ct. 591, 45 L. Ed. 830. But we find nothing in the Limited Liability Act (46 USCA § 181 et seq.) which makes such diligence a condition precedent to the exoneration granted by section 4282. Nor can it be urged that the Harter Act has modified the former statute, for section 6 of the Harter Act (27 Stat. 446) expressly declares the contrary. * * *

"The libelants argue that, whatever the British law may be, our decision must be rendered in their favor because of The Malcolm Baxter, Jr., 277 U. S. 323, 48 S. Ct. 516, 72 L. Ed. 901. While the fire statute was not involved in that litigation, limitation of liability under section 4283 was, and the libelants seize upon the following language at page 331 of 277 U. S., 48 S. Ct. 516, 517: 'Both courts below agreed that the Baxter was unseaworthy on sailing, and that respond-

ent failed to exercise due diligence to ascertain her condition before sailing. This was sufficient ground for denying the petition for exoneration and limitation of liability under the Harter Act (Act Feb. 13, 1893, c. 105, 27 Stat. 445 [46 USCA §§ 190–195]), and acts permitting limitation of liability to the vessel and pending freight (R. S. §§ 4282–4289 [46 USCA §§ 175, 182–188])'. * * *

"It will be noticed that the failure to exercise due diligence was referred to as that of the respondent, the vessel owner. Had it been only that of the vessel's master, the benefits of the Harter Act would have been lost, but not the benefits of the Limitation of Liability Act, under the authorities."

See, also, The Yungay (D. C.) 58 F.(2d) 352.

If the contention of appellants in this respect were sound, the Limitation Act could never be held to apply to damage occurring before the breaking of the ground for the voyage. The following cases are to the contrary: In re Michigan Steamship Co. (D. C.) 133 F. 577; The C. H. Northam (D. C.) 181 F. 983; The Sunbeam (C. C. A.) 195 F. 468; Eastern Steamship Corp. v. Great Lakes Dredge & Dock Co. (C. C. A.) 256 F. 497; The Muriel (D. C.) 25 F.(2d) 505; The South Shore (D. C.) 29 F.(2d) 207; Lehigh Valley R. Co. v. Jones (C. C. A.) 50 F.(2d) 828.

■ A limitation proceeding is a special statutory proceeding. The statute and the rules of the United States Supreme Court prescribe the procedure in such cases and, no provision being made thereby for a jury trial, it was properly denied in this case. The Victoria (D. C.) 3 F.(2d) 330; In re East River Co., 266 U. S. 355, 45 S. Ct. 114, 69 L. Ed. 324.

■ Many of the objections which are here raised by appellants relate to the sufficiency of the evidence to support the findings of fact which were made by the commissioner and affirmed by the District Court. The rule has been too frequently stated to require repetition here, that where the special commissioner or master has heard and seen the witnesses and examined all of the exhibits and the court has affirmed the findings of the commissioner or master, their findings of fact are conclusive upon this court upon appeal if there is any substantial evidence

to support them. Luckenbach v. W. J. McCahan Sugar Refining Co., 248 U. S. 139, 39 S. Ct. 53, 63 L. Ed. 170, 1 A. L. R. 1522; Continental Corp. v. National Union Radio Corp. (C. C. A.) 67 F.(2d) 938; Davis v. Schwartz, 155 U. S. 631, 636, 15 S. Ct. 237, 39 L. Ed. 289; The June Ames (C. C. A. 2) 66 F.(2d) 415, 416; The Fulton (C. C. A. 2) 54 F.(2d) 467; The Wildcroft, 201 U. S. 378, 387, 26 S. Ct. 467, 50 L. Ed. 794; United States v. Boston Sand & Gravel Co. (C. C. A. 1) 23 F.(2d) 839.

In the case of The Benjamin Noble (C. C. A.) 244 F. 95, 100, occurs a statement which is particularly applicable to the instant case: "Strenuous objection is made to the trial judge's estimate of the weight that should be accorded to some of the evidence concerning the overloading of the Noble, and of the credibility of some of the witnesses upon that subject and upon still other matters involved in the controversy. We need not recount all the objections. Counsel on both sides were alert and persistent in bringing out all facts and circumstances of seeming relevancy to the issues, and the court indulged counsel in this course to a liberal degree. At the close of the trial and when the demeanor of the witnesses and their testimony were fresh in mind, the judge delivered an oral opinion which shows that he had a full appreciation of the testimony. This opinion was subsequently reduced to writing and, apart from the introduction of citations, without change of any importance. In our view of the evidence we cannot accept the claims of appellant that some of the conclusions of fact reached by the trial judge are unsupported by the testimony, much less that they are opposed to the testimony. This would be to accept part of the testimony, not the whole of it; it would be to substitute our estimate of credibility derived from the record for the impressions received by the judge who actually saw the witnesses and heard them testify. We are unanimous in the belief that no prejudicial error is shown as respects any of the conclusions of fact or law. The present opinion has been prepared in deference to the earnest contentions of counsel and in an effort to meet some of the more prominent contentions, rather than in the belief that a written opinion here is necessary."

The decree is affirmed.